

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom DeBerry, Member
State Board of Control
Austin, Texas

Dear Senator DeBerry:          Opinion No. O-3708

                               Re:  Procedure for the State Board
                                    of Control where contractors
                                    for State supplies make de-
                                    fault in deliveries.

          Your letter of recent date, touching the matter
above stated, is as follows:

     "Under your Opinion No. O-2022, dated July 17, 1941,
     you have outlined a procedure for the Board of Con-
     trol to follow in cases where contractors on term
     contracts have failed to fill orders in a reasonable
     length of time. It is reasonable to suppose that the
     same procedure should be followed in the case of spot
     orders or daily purchases.

     "To follow this procedure in every case where a con-
     tractor fails to make delivery in a reasonable length
     of time involves the State in a procedure which ulti-
     mately costs the State much more than the amount sought
     to be recovered. To illustrate:

     "1.  Many times the total amount of money involved
          in the contract order or spot purchase order
          is so small that to follow the procedure out-
          lined in your opinion would cost much more
          than the total amount involved.

     "2.  In many instances where new bids are taken,
          no bids can be secured on the supplies in
          question.

     "3.  In many instances where new bids are taken
          and the difference, if any, charged to the
          original contractor, the procedure outlined
          in the preparation of the file for submission

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

to you and your disposition thereof,
would involve an expenditure much
in excess of the amount in question
in regard to the difference of the
bid.

"Of course, where new bids are taken and the dif-
ference, if any, charged to the original contract-
or who pays same, we will consider the file closed."

Before undertaking to answer your questions, we will
quote the final paragraph from our Opinion No. O-2922, to which
you refer:

"So that, you are respectfully advised that
your Board should acknowledge receipt of the
Pittsburgh Plate Glass Company's letter, saying
to the Company that in the event the Company
fails or refuses for any cause to deliver the
merchandise upon any proper order under the con-
tract, within a reasonable length of time, then
the State Board of Control will purchase such
merchandise on the open market, at the best
possible price, and charge the Pittsburgh Plate
Glass Company with the difference, if any, in
price, over and above the contract figures, as
provided in the proposal upon which the contract
was entered into; and, further, that whether or
not the Company has been absolved from such lia-
bility by any act of the Government will be re-
ferred to the Attorney General of the State for
his determination as the basis for an action upon
the contract."

This, we believe, is the only procedure suggested by
us in that opinion.

Answering, we beg to advise:

1. Where the total amount of money involved in the
contract order or spot-purchase order is so small that to fol-
low the procedure suggested by us would cost many times more
than the amount involved, as you state in question No. 1, com-
mon business prudence and sound official discretion would war-
rant that no further action whatever should be taken by you.
It would appear, however, that the procedure mentioned by us

in our former opinion could be taken, and should be taken in every case of default, to the extent of making reply to the defaulting contractor (whether term contract or spot contract) and the purchasing by the Board of the supplies ordered, where the same may be purchased on the market. Moreover, if such supplies are actually purchased by the Board, then you should further notify the contractor of the excess cost of such supplies, if any, and that the contractor would be charged with such excess. Such procedure would appear to be at a nominal cost only, and should with propriety be followed in all cases of default.

2. In those cases where new bids are called for, and no bids can be secured for the supplies needed, the matter obviously is at an end. If in such case no bids can be had, then no purchase can be made, and there could be no possible basis for any super-added liability in any event.

In this connection, all facts and circumstances known to your Board may be taken into consideration in reaching your conclusion to ask for new bids on such supplies. This is a matter of sound business judgment and just official discretion with you, since such a procedure might involve costs with no reasonable prospect of obtaining the supplies.

3. Your question 3 is not so easily answered, but the answer is yet controlled by the principles of sound business judgment and just official discretion above mentioned.

In all instances where new bids are taken and the excess difference, if any, has been charged to the original contractor, there arises a liability on the part of the contractor upon his term contract or his spot-purchase contract for such difference, and no officer or board of the Government may release such liability.

If, in such a case, however, the amount of such difference in cost of supplies by way of super-added liability to the contractor's liability is so small as that indisputably the cost necessary to a preparation and submission of the matter to the Attorney General for action would exceed the amount involved, then, it is the opinion of this Department your Board should not incur such cost, and should not submit the matter to the Attorney General for action at all. In this connection, we would add that where there have been repeated defaults by a contractor, and the aggregate of such super-added liability would exceed the cost of preparing and submitting to the Attorney General a statement of

Honorable Tom DeBerry - page 4

such matters, then such statement should be made for the information and guidance of this Department.

You say in the last sentence of your letter:

"Of course, where new bids are taken and the difference, if any, charged to the original contractor who paid the same, we will consider the file closed."

This course would be proper where the file pertains only to the particular order or orders involved, whether upon spot contract or upon term contract.

We trust that what we have said sufficiently answers your inquiries.

Very truly yours

APPROVED JUN 23 1942

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

